UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

TIMOTHY J. KILLGROVE,

    Debtor.
_____/

Bank of America,

    Appellant,

v.

Timothy J. Killgrove,

    Appellee.
_____/

Civil No. 14-10781
George Caram Steeh

## OPINION AND ORDER

These are the consolidated appeals from rulings of Judge Shapero in the Chapter 7 bankruptcy case of debtor Timothy Killgrove ("Appellee"). Killgrove ("Appellee") filed for Chapter 7 bankruptcy on August 22, 2011. The Bank of America ("Appellant") subsequently filed an adversary proceeding, contending that Appellee should be denied discharge of his debt according to 11 U.S.C. §727 and §523. Some of the claims were disposed of on Appellee's motions for summary judgment before the bankruptcy court. The case then continued to trial, following which the bankruptcy court ruled against Appellant on its action for denial of discharge and nondischargeability of debt on December 20, 2013. Appellant also filed a motion to dismiss Appellee's chapter 7 bankruptcy case, which the court denied shortly after ruling on the claims in the

adversary proceeding. For the reasons given below, the determinations given by the bankruptcy court in both of these matters are hereby affirmed.

## BACKGROUND

Appellee is a licensed dentist in the state of Michigan. His practice Timothy J. Killgrove, D.D.S., P.C., Family and Cosmetic Dentistry ("Killgrove PC") was established in 1996 when he purchased the practice of a retiring dentist. That purchase included patient files that are at issue in this case. In May 2007, Killgrove PC took a loan in excess of $300,000 from Appellant to improve his practice. The finance agreement included the following terms: (a) a principal loan sum of $367,710.42; (b) Appellee's personal guarantee of the loan; (c) giving Appellant a blanket lien on all assets of Killgrove PC; and (d) a warranty that Appellee would not relocate the collateral without prior notice to, and consent of, Appellant.

Appellee describes that Killgrove PC began to face financial difficulties, due largely to the poor economy, beginning in approximately 2009. Appellee states that Killgrove PC's area of expertise, cosmetic services, constitutes elective procedures that are rarely covered by insurance, and thus placed his practice in a hard position to weather the financial downturn. Furthermore, Appellee states that Killgrove PC was tied up in other litigation with dental laboratories for nonpayment of goods and services. Appellee made some efforts to reduce his financial burdens, but, nevertheless, continued to struggle to pay his rent and state and federal taxes, as well as personal financial obligations like mortgage payments, utilities, and health insurance. Ultimately, it became difficult for Appellee to make payments to Appellant, and he completely ceased making payments around April 2011.

Appellee attempted to sell his practice to Stephen E. Jacobson, D.D.S., P.C., principal of the Jacobson Dental Group. However, the Appellee and Jacobson could not come to terms on a price, and, instead, negotiated a different arrangement whereby Appellee would become a wage-earning employee of Jacobson Dental Group. The agreement was two years in length and mutually renewable. Under the agreement, Appellee was to be compensated with a percentage of the revenue he brought in by treating patients from Killgrove PC. If Appellee wished to leave the employ of the Jacobson Dental Group, he would have the right to take the patient files with him. The agreement provides that Appellee is responsible for his own malpractice and disability insurance, dental license fee, pharmacy license fee, and DEA license fee.

Upon closing the practice on July 26, 2011, Appellee took with him the medical records of his 490 patients and receivables of about $18,000, some of which was used for payroll taxes and fulfilling obligations to employees' 401(k) plans. Patients received a phone call or postcard stating that Killgrove PC had joined Jacobson Dental Group and notifying them that Dr. Killgrove could be found across the street at the practice's "new location." Furthermore, the answering machine at Killgrove PC's former telephone number was changed to inform callers of the new arrangement and direct them across the street to the Appellee's new place of business. Finally, the three employees of Killgrove PC joined the Appellee in his move to Jacobson Dental Group. Appellant repossessed and sold the physical assets of Killgrove PC, but did not attempt to foreclose on the intangible assets such as the patient list, patient files, phone number, and goodwill ("Collateral"). About the same time, Appellee filed for Chapter 7 bankruptcy.

STANDARD OF REVIEW

Federal district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. §158(a). For findings of fact, the district court is to review the bankruptcy court's findings using a clearly erroneous standard. Nicholson v. Isaacman (In re Isaacman), 26 F.3d 629, 631 (6th Cir. 1994). Reversal based on a finding of fact is only warranted if the reviewing court harbors a "definite and firm conviction that a mistake has been committed." Kalamazoo River Study Group v. Rockwell Intern. Corp., 274 F.3d 1043, 1047 (6th Cir. 2001). The court reviews the bankruptcy court's conclusions of law *de novo*. Hamilton v. Herr (In re Hamilton), 540 F.3d 367, 371 (6th Cir. 2008).

ANALYSIS

The dispute here concerns the dischargeability of Killgrove's personal guarantee of the loan taken by Killgrove PC from Appellant (herein referred to as Killgrove's or Appellee's debt). Appellant has asked the court to review six issues relating to dischargeability: (1) whether Appellee's actions constitute conversion or fraudulent transfer of the collateral, therefore exempting the debt from discharge; (2) whether Appellee intentionally violated the Finance Agreement; (3) whether Appellee's actions constitute willful and malicious injury under 11 U.S.C. § 523(a)(6); (4) whether Appellee made a false oath under 11 U.S.C. § 727(a)(4); (5) whether Appellant is entitled to attorney fees; and (6) whether Appellee's Chapter 7 bankruptcy should be dismissed under 11 U.S.C. §707(a) on the basis of bad faith. Appellant asserts that if any of these questions are answered in the affirmative, then the bankruptcy court's holding must be

overturned and Appellee's debt held to be nondischargeable. The court will address these claims in turn.

A. Conversion or Fraudulent Transfer

The applicable bankruptcy provision addressing conversion/fraudulent transfer in relation to the dischargeability of debt states in relevant part:

> (a) The court shall grant the debtor a discharge, unless--
>
> (2) the debtor, with *intent to* hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
>
> (A) *property of the debtor*, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A) (emphasis added). In other words, even if Appellant could prove that Appellee acted with the intent to "hinder, delay, or defraud" Appellant, and not, as Appellee claims, to protect the privacy rights of his patients, it would also be necessary to establish that the collateral was the property of the Appellee.

The bankruptcy court determined that Appellee has no ownership interest in the collateral, which is the property of Killgrove PC subject to the security interest of Appellant. Nonetheless, Appellant argues that Appellee's move of Killgrove PC's patient list to the Jacobson Dental Group constituted conversion and is a basis to hold Appellant's debt nondischargeable. The bankruptcy court held that Appellee's use of the collateral did not affect dischargeability because the patient list is not the property of Appellee. In re Killgrove, 11-62528, 2013 WL 7018546 at *12 (Bankr. E.D. Mich. Dec. 20, 2013).

Appellant cites to In re Stephen Grosse P.C., but the case does not assist the court in determining this issue and, moreover, does not address 11 U.S.C. § 727. 44 B.R. 200, 202 (Bankr. E.D. PA 1984). Appellant also cites, among other caselaw, Warshall v. Price, 629 S.2d 903, 905 (Fla.App. 4 Dist. 1993). However, the Price case also differs from the instant case, because again 11 U.S.C. § 727 is not at issue, and the plaintiff was the actual owner of the patient list. Appellant's citations do not assist it in showing that the collateral is the property of Appellee, which is not established by his ownership of Killgrove PC. Shareholders of a corporation have no interest in the property or assets of the corporation, as noted by the bankruptcy court, citing In re Hopkins, 2012 WL 423916, n.2 (Bankr. W.D. Mich 2012). This proposition is not disputed by Appellant.

Although evidence was presented in support of the Appellant's argument, the bankruptcy court weighed that evidence as well as conflicting evidence, such as the need for Appellee to preserve the files of his practice's patients, the likelihood that his patients would follow him, as well as the lack of a non-compete agreement with Appellant. The bankruptcy court came to the conclusion that Killgrove had not transferred the assets, but had "cease[d] operating Killgrove PC at its then location, become an employee of Jacobson Dental Group, and hope[d] that his former patients might follow him there." Bankruptcy Court's Opinion at 12. As Killgrove quotes in his brief, the bankruptcy court specifically determined that

> [t]he ultimately achieved result of Defendant becoming an employee of
> Jacobson Dental Group and bringing the Collateral with him does not, in
> the Court's view, sustain Plaintiff's burden of proving there was a sale,
> exchange, lease, or other disposition of an interest in the Collateral, nor
> any attachment to it of any lien, security interest, or encumbrance. By its

-6-

> nature, the Collateral remains the property of Killgrove PC, subject to Plaintiff's security interest, and simply followed Defendant to Jacobson Dental Group, where he resumed his practice.

Bankruptcy Court's Opinion at 15. In this situation, Killgrove took patient files with him and continued treating former patients, and was violating a covenant not to compete, which the bankruptcy court weighed in making its determination that Killgrove did not convert or fraudulently transfer collateral. The court finds no error in the bankruptcy court's determination.[1]

B. Intentional Violation and Willful and Malicious Injury

Because Appellant's second and third claim are substantially similar and derive from the same statute, they are addressed together. In these claims, the Appellant asserts that Appellee's actions amount to an intentional breach of contract and that those acts alone constitute willful and malicious injury to an extent necessary to exempt Appellee from discharge. The bankruptcy court made a finding of fact that Appellee may have potentially breached the contract intentionally but, even so, such actions did not constitute willful and malicious behavior. In re Killgrove, 11-62528, 2013 WL 7018546 at *12 (Bankr. E.D. Mich. Dec. 20, 2013). This finding is likewise not clearly erroneous.

The portion of the bankruptcy code that Appellant relies on for these claims states in part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

---

[1] Accordingly, the court declines to address the issue of the collateral's value.

11 U.S.C. § 523(a)(6). The bankruptcy court determined that the evidence demonstrated that Appellee was acting out of self-preservation and a belief that he was complying with the law in protecting patient files. In re Killgrove, 11-62528, 2013 WL 7018546 at *12 (Bankr. E.D. Mich. Dec. 20, 2013). It was the bankruptcy court's determination that Appellee's actions were driven by his personal and professional financial situation. Moreover, Appellee notified Appellant of his actions in moving the patient list. Finally, as the bankruptcy court noted, the lack of a non-compete allowed for Appellee's contact with the patients of Killgrove PC. This fact caused the bankruptcy court to question even whether actual injury was caused to Appellant by Appellee's actions.

The court is in agreement with the bankruptcy court that even if Appellee intentionally breached a contract and put his financial future ahead of Appellant's, this behavior is not "so reprehensible as to warrant denial of a fresh start." In re Stollman, 404 B.R. 244, 266 *quoting* Novartis Corp. v. Luppino (In re Luppino), 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998). "Debts remain dischargeable even if there is an intentional breach of contract that is substantially certain to cause injury, unless the conduct would be deemed a tort under state law." Lockerby v. Sierra, 535 F.3d 1038, 1043 (9th Cir. 2008). Therefore, "a party may intentionally breach a contract with the knowledge that an injury may result, but the nature of the injury is in large part foreseeable and assumed as a part of the risk of doing business." Matter of Haynes, 19 B.R. 849, 852 (Bankr. E.D. Mich. 1982).

Appellant's principal argument for Appellee's violation of § 523(a)(6) is that any act of conversion inflicts wilful and malicious injury. As the bankruptcy court determined,

however, and as is reiterated above, Appellee's use of the patient list did not amount to conversion. Even if conversion had been established, "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). The bankruptcy court highlighted the situation giving rise to Killgrove's actions:

> (a) both Defendant and Killgrove PC were suffering extreme financial difficulties; (b) Defendant made numerous good-faith efforts to seek relief prior to resorting to any breach of his contractual obligations; (c) the Court finds that Defendant's conduct was directed toward self-preservation and not toward inflicting injury on Plaintiff; (d) the financial injuries that Plaintiff sustained were in the nature of breach of contract, rather than tort; and (e) Plaintiff still has a valid security interest in the Collateral, although its value may have been affected by what occurred and by the essentially inherent nature of the Collateral.

Bankruptcy Court Opinion at 19. The bankruptcy court, accordingly, determined that nondischargeability was not supported under the circumstances.

Ultimately, the remainder of Appellant's arguments and authorities are unpersuasive; even if there had been an unauthorized conversion that led to injury, and not just a "relocation," as the bankruptcy court found, a willful and malicious act would be required. The court finds no error in the bankruptcy court's evaluation of the evidence or its application of the law on this claim.

C. False Oath by Failing to Disclose Revenue Stream

Appellant next claims that Appellee failed to disclose revenue and assets from his "defacto practice" and is therefore exempt from discharge on this basis. Appellee points to the bankruptcy court's finding of fact that Appellee made no false statements of fact in the bankruptcy schedules, argues that Appellant failed to make such an allegation in the second amended complaint, and also asserts that, as a W-2 employee,

he was not required to make any such disclosure. Appellee's Brief at 7. The bankruptcy court found that the Appellant had no cause of action under 11 U.S.C. § 727(a)(4) because Appellant had no personal ownership over the collateral. In re Killgrove, 11-62528, 2013 WL 7018546 at *13 (Bankr. E.D. Mich. Dec. 20, 2013).

Even though Appellant failed to allege this specific provision in the Second Amended Complaint, the court will address the issue because Appellant has generally presented an argument for an exemption from discharge under 11 U.S.C. § 727(a)(4) in the pleadings. However, the court agrees with the Appellee and the bankruptcy court that Appellant has no claim under § 727(a)(4) because Appellee was merely acting as a W-2 employee of the Jacobson Dental Group.

> The statute that Appellant points to for this claim states, in part, that:
>
> (a) The court shall grant the debtor a discharge, unless—
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case--
>
> (A) made a false oath or account;
>
> (B) presented or used a false claim;
>
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

11 U.S.C. § 727(a)(4).

The bankruptcy court determined that the Appellee had no duty to disclose specific assets of Killgrove PC because "a shareholder in a Corporation has no personal

ownership interest in its property or assets." In re Killgrove, 11-62528, 2013 WL 7018546 at *13 (Bankr. E.D. Mich. Dec. 20, 2013). Further, Appellee is not operating a practice out of the Jacobson Dental Group, but is acting as a W-2 employee. Appellant's allegation that Killgrove PC patients generated $539,498 in revenue during the period July 1, 2011 through December 31, 2012 does not affect the court's determination, as that is the revenue of the Jacobson Dental Group. The Jacobson Dental Group, in turn, compensated Appellee with a 30% commission, and Appellee designated this income in Schedule I. Appellant's Ex. 12. Although it appears uncontested by Appellee that he began to make substantially more per month than the $13,866.54 that he reported in his Schedule I, he was only required to give an estimate of his average or projected monthly income at the time the case was filed. At that time Appellee had only been working the Jacobson Dental Group for one month, and there is nothing to suggest that Appellee's estimate provided at that point in time represented a false statement for purposes of 11 U.S.C. § 727(a)(4). The bankruptcy court did not err here.

D. Attorney Fees and Treble Damages

The statute cited by Appellee in making an argument for attorney fees and treble damages states in part:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees;
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.

M.C.L.A. 600.2919a. "Trebling isn't automatic; it is within the Court's discretion based on what is fair under the circumstances." In re Stewart, 499 B.R. 557 (Bankr. E.D. Mich. 2013). Given its finding of neither conversion, nor willful or malicious injury, nor false oath or misrepresentation, it was not unreasonable for the bankruptcy court to conclude that an award of attorney fees and treble damages were not warranted. The court finds that the bankruptcy court properly took into account the totality of circumstances in this matter and did not abuse its discretion here.

E. Dismissal of Chapter 7 Filing for Lack of Good Faith

Appellant also appeals the bankruptcy court's order denying Appellant's motion to dismiss Appellee's chapter 7 bankruptcy case. Appellant argues that Appellee has failed to demonstrate that he acted in good faith pursuant to 11 U.S.C. § 707a. The bankruptcy court and Appellee principally cite the reasoning outlined in the sections above to argue that Appellee's actions were not in bad faith.

The applicable provision states in relevant part:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including--

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee….

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(I) does not arise or is rebutted, the court shall consider--

>(A) whether the debtor filed the petition in bad faith; or
>
>(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C.A. § 707a.

Appellant asserts that a chapter 7 bankruptcy may be dismissed on the ground of lack of good faith and that the debtor has the burden of establishing good faith, citing Industrial Insurance Services v. Zick, 931 F.2d 1124, 1127 (6th Cir. 2000). Appellant reiterates many of its arguments addressed in the sections above in making this argument, asserting that (a) Killgrove converted and fraudulently transferred the collateral; (b) it would be unfair for Killgrove to keep the assets of the practice; (c) devaluation of the collateral; (d) Killgrove has the present ability to repay his creditors; and (e) false statements/misrepresentations in the bankruptcy filing.

Chapter 7 filings have been dismissed for bad faith when debtors did not face financial loss or calamity, when debtor's filling was motivated by nonfinancial reasons such as causing trouble for a divorced spouse, or "generally in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish life-style, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." In re Tamecki, 229 F.3d 205, 207 (3d Cir. 2000); see also In re Huckfeldt, 39 F.3d 829, 830 (8th Cir. 1994).

The court agrees with the bankruptcy court that the circumstances in which Appellee found himself do not rise to a failure of the "smell test" addressed in the case

of <u>Merritt v. Franklin Bank</u>, 211 F.3d 1269, 1270 (6th Cir. 2000), cited by Appellant. Appellee faced an unreasonably high rent payment, mounting personal financial troubles, and a substantial decrease in income due to the failing economy and the nature of his business. Furthermore, Appellee notified Appellant of his closing of Killgrove PC and, as discussed above, made no false statements in his bankruptcy filing. Thus, the court agrees with the bankruptcy court that there is no basis for dismissal of Appellee's chapter 7 filing under 11 U.S.C.A. § 707a.

## CONCLUSION

For the reasons given above, the bankruptcy court's December 20, 2013 Opinion Regarding Plaintiff's Action for Denial of Discharge and Nondischargeability of Debt, as well as its January 16, 2014 Order Denying Motion to Dismiss, are hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated: August 22, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 22, 2014, by electronic and/or ordinary mail and also on Karen E. Evangelista, 439 South Main, Suite 250, Rochester, MI 48307.

s/Barbara Radke
Deputy Clerk

---